AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

e-filing

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| EDGARDO REYES, RICARDO REYES, AND ARMANDO SOLORIO | ) ) ) ) ) | Case No. |
| *Defendant(s)* | | |

Filed
FEB 20 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

15  70205  MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Feb. 20, 2015__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | CONSPIRACY TO POSSESS METHAMPHETAMINE WITH THE INTENT TO DISTRIBUTE; MAXIMUM PENALTIES: 10 YEAR MANDATORY MINIMUM UP TO LIFE IMPRISONMENT; $10,000,000 FINE; 5 YEARS SUPERVISED RELEASE; $100 SPECIAL ASSESSMENT |

This criminal complaint is based on these facts:

See attached Affidavit of Task Force Officer Juan Rocha

Approved: _____ (SAUSA DEZAEI)
                AUSA

☑ Continued on the attached sheet.

_____
Complainant's signature

Juan Rocha
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/20/15

City and state: San Jose, CA.

_____
Judge's signature

Howard R. Lloyd
Printed name and title

## AFFIDAVIT OF JUAN ROCHA

I, Juan Rocha, a Task Force Officer with the Drug Enforcement Administration in San Jose, California, being first duly sworn, do declare and state as follows:

1. I have been employed by the Gilroy Police Department as a police officer since August 2007, and am currently assigned as a Task Force Officer to the Drug Enforcement Administration ("DEA"), San Francisco Field Division, San Jose Resident Office, in the Task Force Group. I was previously assigned to the Bureau of Narcotic Enforcement, Unified Narcotic Enforcement Team, as a Task Force Agent, and before that I was assigned as a detective to the Gilroy Police Department's Anti-Crime Team. Prior to joining the Gilroy Police Department, I was a police officer with the Watsonville Police Department.

2. During my law enforcement career, I have conducted or participated in over 200 criminal investigations of illicit drug-trafficking organizations, ranging from street-level operations to major drug trafficking organizations. I have also conducted more than 500 hours of narcotics trafficking surveillance. As a result, I am intimately familiar with narcotics trafficking.

3. This Affidavit is made in support of a Criminal Complaint charging Edgardo Reyes, Armando Solorio, and Ricardo Reyes, with Conspiracy to Possess Methamphetamine with the Intent to Distribute, in violation of 21 U.S.C. § 846.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me that supports probable cause for arrest. Rather, I have set forth only the facts I believe are necessary to support the lawful arrest of the individuals listed in this Affidavit.

5. Where statements made and actions taken by other individuals (including other law enforcement officers) are referenced in this Affidavit, such statements and actions are described in sum and substance and in relevant part only. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part only.

1

## Statement of Probable Cause

### I.  Early Investigation and One-Pound Buy-Walk

6.      In January 2015, I learned from a Confidential Source ("Source") that an individual was selling methamphetamine in multiple-pound quantities in Santa Clara County and Santa Cruz County. Using information provided by Source (specifically, the individual's physical description and the license plate number of the vehicle he was known to be using), investigating officers were able to determine the suspect's name: Edgardo Reyes ("Reyes").

7.      As part of the investigation, I instructed Source to arrange with Reyes a one-pound methamphetamine buy-walk for the morning of Friday, January 30, 2015. On January 28, 2015, Source called Reyes at 408-420-9272 (the "Target Telephone") to arrange the buy-walk. During their conversation, which Source recorded,[1] Source told Reyes that Source would use a truck driver to transport the methamphetamine to the State of Oregon and the State of Washington. Source and Reyes agreed to meet in Gilroy, California, on Friday, January 30, 2015, to complete the buy-walk.

8.      On Friday, January 30, 2015, at approximately 9:00 a.m., I held a briefing with several other investigating officers regarding the buy-walk. After the briefing, another officer and I met with Source and provided him with $5,500 in Official Advanced Funds for the buy-walk. I also gave Source an electronic audio monitoring device so that officers could monitor the buy-walk between Source and Reyes. Source left for the designated parking lot where the buy-walk would take place.

9.      Source arrived at the designated parking lot at approximately 10:31 a.m. At approximately 10:32 a.m., Source called Reyes at the Target Telephone. A male individual, who I believed was Reyes, answered. Source told Reyes he was parked in the designated parking lot, and Reyes in turn told Source he was sending his nephew, who was later identified as Armando

---

[1] On January 27, 2015, at approximately 5:00 p.m., I provided Source with an audio recorder and instructed Source to record any phone calls with Reyes. No phone call between Source and Reyes had been recorded up to that point.

2

Solorio ("Solorio") to meet with Source.[2] (A person who delivers drugs is often referred to as a "runner" or "courier.") The phone call ended.

10. At approximately 10:53 a.m., Source received a phone call from Solorio[3] and told Source he was located near the restaurant El Pollo Loco. Source provided Solorio with a description of Source's vehicle and with directions to where Source was parked. At or near the time of this call, one of the investigating officers, who at this time were conducting surveillance, spotted a black Honda Accord (California license plate number 6GGA652) near El Pollo Loco occupied by a driver. This black Honda Accord then parked near Source.

11. An investigating officer saw Solorio get out of the black Honda Accord and grab a brown tool bag from the trunk. Solorio got into Source's vehicle. I heard Source, through the electronic audio monitoring device, inspect an object that Solorio brought into Source's vehicle. At approximately 10:59 a.m., Solorio got out of Source's vehicle and left.

12. I thereafter met with Source and obtained a bundle from him which appeared to contain methamphetamine. This bundle was given to Source by Solorio. I conducted a presumptive test on the suspected methamphetamine, and the results of the test were presumptive positive for methamphetamine.

## II. Arranging a Separate Twelve-Pound Methamphetamine Purchase with Reyes

13. On February 1, 2015, at approximately 10:55 a.m., Source received a text message from Reyes's Target Telephone. The following is a summary of the ensuing text message exchange, which was in Spanish and which I translated into English,[4] between Source and the Target Telephone:

*Reyes first states, "New fruit has arrived."; Source asks, "Ok, the one from your cousin?"; Reyes answers, "Yes."; Source replies, "And how much is that popsicle*

---

[2] Investigating officers have not yet confirmed whether or not Solorio is, in fact, Reyes's nephew.
[3] Solorio called from 408-912-4188, not the Target Telephone.
[4] I am fluent in Spanish.

3

> *of that fruit?"; Reyes says, "Let me talk to him and I'll let you know."; Reyes and Source agree to keep in touch.*

Based on my training and experience, it is my belief that the text message exchange between Source and Reyes, which is in code (e.g., "fruit" is a code word for narcotics while "popsicle" is a code word for one pound), is referring to a new shipment of methamphetamine that Reyes was attempting to sell.[5] Additionally, the "cousin" who is referenced in the text message exchange is believed to be Ricardo Reyes ("Ricardo Reyes"), the third individual we are seeking to charge. Investigating officials believe Ricardo Reyes is Reyes's cousin given their shared last name.

14. On February 7, 2015, at 1:58 p.m., Source received the following text messages from Reyes: "*What's up*" and "*How are you.*" The following is a summary of the ensuing text message exchange, which was in Spanish and which I translated into English:

> *Source responded, "Good dude" and "What's up, ready?"; Reyes replied, "When?" and "Yes."; Source stated "Oh and how much, so I know and I can be ready with the papers."; Reyes then asked, "How many are you going to need?"; Source replied, "You think you can get me 10 to 15, but how much?"; Reyes stated, "5250."; Source said, "Ok, I will let you know, ok?"; Reyes answered, "Let me know in advance so I can be ready, we'll be in touch."; Source then said, "Ok, so you can prepare them the same way as last time."; Reyes replied, "Ok."; Reyes then asked Source, "Do you need any of the other fruit?"; Source answered, "No, for now it's only going to be of the same fruit, ok?"; Reyes replied, "Ok."*

Based on my training and experience, it is my opinion that Reyes contacted Source to set up a methamphetamine sale. In summary, Reyes was attempting to sell ten to fifteen pounds of methamphetamine at $5,250 per pound (the price per pound usually drops when a buyer

---

[5] On February 2, 2015, I met with Source to photograph the text message exchange between Source and the Target Telephone. The photos are in the case file and available for review.

purchases a greater quantity) and was further agreeing to prepare the methamphetamine the same way he did with respect to the one-pound buy-walk (specifically, wrapping the methamphetamine in multiple layers of plastic, with grease rubbed on and in the wrapping).

15. On February 11, 2015, at approximately 6:00 p.m., Reyes sent Source a text message that read, "*What's up dude, were ready.*" Source replied, "*Let me see if the truck is leaving and I'll let you know.*" In response, Reyes stated, "*Let me know in advanced.*" Source said, "*Ok good dude.*" Reyes replied, "*Ok.*"
Based on my training and experience, it is my opinion that Reyes is telling Source that the ten to fifteen pounds of methamphetamine was ready for the sale. The referenced "truck" is the truck that Source said he would use to transport the methamphetamine to the State of Oregon and the State of Washington, which Source first mentioned in connection with the one-pound buy-walk.

16. On February 14, 2015, at approximately 8:46 p.m., Reyes sent Source a text message that read, "*Are you already asleep dude?*" Source replied, "*No I'm here.*" Reyes said, "*Confirm the time.*" Source stated, "*On Friday at 10 A.M., in Gilroy ok, 12 popsicles ok?*" Reyes said, "*Ok.*"

### III. Pen Register Order, Search Warrant, and Twelve-Pound Buy-Bust Confirmed

#### A. Pen Register Order

17. On February 11, 2015, the Honorable Paul S. Grewal, United States Magistrate Judge, signed an order requiring Sprint to provide investigating officers with GPS or precision location coordinates for the Target Telephone. As noted above, Reyes was using the Target Telephone to distribute methamphetamine. (The Target Telephone is first referenced at Paragraph 7.)

18. On February 12, 2015, at approximately 7:26 a.m., investigating officers began receiving GPS coordinates (in the form of GPS pings) for the Target Telephone. Investigating officers continued to receive GPS pings placing Reyes at or near 1610 Honeysuckle Drive, San Jose, California, a single family residence (the "Subject Premises"), each night between and including February 12, 2015 and February 17, 2015. (The investigating officers earlier suspected

5

that Reyes resided at the Subject Premises based on the following: first, Reyes's vehicle is registered at the Subject Premises; and, second, a separate records check of 1610 Honeysuckle Drive, San Jose, California, disclosed that Edgardo Reyes and Alma Reyes – possibly Reyes's wife – live there.)

19. On February 16, 2015, at approximately 10:49 p.m., I received another GPS ping that placed the Target Telephone within an eight meter radius of the Subject Premises. At approximately 11:00 p.m., another investigating officer and I drove to the Subject Premises. After arriving, I continued to receive GPS pings that placed the Target Telephone at the Subject Premises. As those GPS pings were received, I saw Reyes's vehicle parked in the driveway of the Subject Premises.

**B.  Search Warrant and Twelve-Pound Buy-Bust Confirmed**

20. The following day, on February 17, 2015, at approximately 12:45 p.m., I spoke with Source. I instructed Source to call Reyes at the Target Telephone and finalize the twelve-pound purchase of crystal methamphetamine for Friday, February 20, 2015. I instructed Source to record that call. (As set forth above, following the one-pound buy-walk that took place on January 30, 2015, Source and Reyes exchanged text messages regarding a multiple-pound methamphetamine sale. These messages were exchanged beginning February 1, 2015.)

21. Minutes later, at approximately 12:53 p.m., Source called me back and said that at approximately 12:50 p.m. he (Source) called Reyes at the Target Telephone and that during their telephone conversation Reyes confirmed the twelve-pound purchase for Friday, February 20, 2015. Reyes stated that either he personally or another individual – who Reyes only referred to as "Him" – would show up for the sale. (I believe that Reyes was referencing Solorio, the runner who delivered the methamphetamine to Source during the one-pound buy-walk on January 30, 2015.) Reyes told Source to arrive early to ensure Source had the money for the purchase.

22. On February 19, 2015, Reyes and Source communicated with one another. Reyes confirmed that the twelve-pound purchase would take place the following day, on February 20, 2015, as previously mentioned.

23. On February 19, 2015, a search warrant application was presented to the Honorable Howard Lloyd, U.S. Magistrate Judge, in connection with the Subject Premises. Judge Lloyd signed an order requiring officers to search the Subject Premises on or before March 5, 2015.

IV. **Twelve-Pound Buy-Bust Takes Place and Solorio, Reyes, and Ricardo Reyes are Arrested**

24. On February 20, 2015, Source arrived at 6990 Chestnut Street, Gilroy, California, for the twelve-pound buy-bust and parked his vehicle. Source received a call from Reyes in which Reyes asked where Source was parked. Source told him where he was parked.

25. Shortly thereafter two vehicles, almost in tandem, parked near Source: a pink Honda driven by Solorio, the runner from the buy-walk that occurred on January 30, 2015; and a Chevy truck occupied by Reyes and Ricardo Reyes. The truck is registered to Reyes.

26. Source got out of his vehicle and walked to the pink Honda where he met Solorio, Reyes, and Ricardo Reyes, each of whom at this point had exited their respective vehicles.

27. Source looked into the pink Honda and saw in the rear seat a bag filled with twelve bundles wrapped in aluminum foil. Investigating officials suspect that these bundles contain the methamphetamine which Reyes previously agreed to sell to Source. (I later opened up one of the bundles and saw that it was wrapped in the same manner as that of the one-pound buy-walk methamphetamine.) At that point Source told Solorio, Reyes, and Ricardo Reyes that he needed to call his "guy" in order to obtain the money for the purchase. Source then said the "buzz word" which signaled to the investigating officers they should move in.

28. Investigating officers moved in. Solorio was arrested near the driver's side of the pink Honda. Reyes war arrested near his truck. Ricardo Reyes took off running, but was arrested about 50 yards from the pink Honda. Each was read his Miranda rights in Spanish. Reyes and Ricardo Reyes said they wanted their lawyer and Solorio said nothing.

29. They were booked over at the Gilroy Police Department. During the booking, Solorio identified himself as "Armando Solorio." Ricardo Reyes identified himself as "Ricardo Reyes." He also had a Mexican identification card with the name "Ricardo Reyes."

30. Based on the foregoing, I hereby assert that probable cause exists to believe that Edgardo Reyes, Ricardo Reyes, and Armando Solorio violated Title 21, United States Code, Section 846, Conspiracy to Possess Methamphetamine with the Intent to Distribute. I therefore respectfully request that a warrants be issued for their arrest.

Juan Rocha
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me
this 20 day of February, 2015

HONORABLE HOWARD LLOYD
UNITED STATES MAGISTRATE JUDGE

8