1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
3  THOMAS A. COLTHURST (CABN 99493)
   Chief, Criminal Division
4
   JEFFREY D. NEDROW (CABN 161299)
5  Assistant United States Attorney

6      150 Almaden Boulevard, Suite 900
       San Jose, California 95113
7      Telephone: (408) 535-5045
       FAX: (408) 535-5066
8      jeff.nedrow@usdoj.gov

9  Attorneys for United States of America

10                          UNITED STATES DISTRICT COURT

11                         NORTHERN DISTRICT OF CALIFORNIA

12                                   SAN JOSE DIVISION

13 | UNITED STATES OF AMERICA,       ) CASE NO: CR 15-00145-EJD
                                     )
14 |     Plaintiff,                  )
                                     ) UNITED STATES' OPPOSITION TO
15 | v.                              ) DEFENDANT'S MOTION FOR
                                     ) COMPASSIONATE RELEASE FROM CUSTODY
16 | EDGARDO REYES,                  )
                                     )
17 |     Defendant.                  )
                                     )
18 |_____    )

## I. INTRODUCTION

Defendant Edgardo Reyes is serving a sentence of 154 months imposed by the Court following his 2016 guilty pleas to conspiracy to possess methamphetamine with intent to distribute and possession of methamphetamine with intent to distribute. ECF Nos. 95, 104, 115. Defendant is presently serving his sentence at CI North Lake, in Baldwin, Michigan, with an anticipated release date of May 12, 2026. Defendant brings this motion for release primarily on the ground that 18 U.S.C. § 3582(c)(1)(A) entitles him to a reduction in sentence because he is the only available caregiver to take care of his father, who is in failing health. ECF No. 162. Defendant's motion for a sentence reduction should be denied because he has not established an "extraordinary and compelling reason" warranting compassionate release.

## II. BACKGROUND[1]

### A. The Offense Conduct

In January 2015, a confidential source of information ("CS") informed the Drug Enforcement Administration ("DEA") about a person selling methamphetamine in multiple-pound quantities in Santa Clara County and Santa Cruz County. PSR ¶ 8. Investigating agents followed up on this information, and determined that Defendant was the person involved in selling the methamphetamine. PSR ¶ 8.

At the direction of the DEA, the CS telephoned Defendant and arranged to purchase a pound of methamphetamine, with delivery scheduled for January 30, 2015, in Gilroy, California. PSR ¶ 9. On that day, the CS arrived at the designated delivery location and called Defendant. PSR ¶ 10. About twenty minutes later, Defendant met with the CS and delivered a bundle containing 420.4 net grams of methamphetamine, of which 387.1 grams constituted actual methamphetamine. PSR ¶¶ 11-13.

Between February 1, 2015, and February 17, 2015, the CS and Defendant regularly contacted each other to discuss details of another drug purchase. PSR ¶¶ 16-20. On February 7, 2015, Defendant asked the CS how much methamphetamine he needed, and quoted the CS a price of $5,250 per pound. PSR ¶ 16. Defendant also asked the CS if he needed any additional "fruit." PSR ¶ 16. On February 11,

---

[1] The government relies on the Presentence Report (PSR) and the Court's docket in support of the factual basis in this summary, as well as Government Exhibits 1-4, as noted.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
CR 16-00211-LHK                1

2015, Defendant sent the CS a text message stating, 'What's up dude, we're ready." PSR ¶ 18.  On February 17, 2015, the CS and Defendant spoke on the phone and finalized a twelve-pound purchase of methamphetamine for February 20, 2015.  PSR ¶ 21.

On February 20, 2015, the CS, Defendant, and defendant's co-defendants, Defedant's nephew Armando Solorio and Defendant's cousin Ricardo Reyes, met for the 12-pound transaction, with agents conducting surveillance on the meeting.  PSR ¶¶ 23, 29.  Based on a pre-arranged arrest signal, agents approached Defendant and the other two men.  PSR ¶ 23.  Defendant ran towards his truck and was arrested at the driver's side door.  PSR ¶ 23.  Co-defendant Solorio was arrested as he ran towards his car.  PSR ¶ 23.  Agents subsequently found a bag in Solorio's car.  PSR ¶ 23.  The bag contained 12 bundles, of which 5,243 grams were determined to constitute actual methamphetamine.  PSR ¶ 24.

### B. The Complaint, the Indictment, and Pretrial Proceedings

Following the arrests, the government filed a complaint against Defendant and co-defendants Solorio and Ricardo Reyes.  This complaint was supported by a detailed affidavit from DEA Task Force Officer Juan Rocha.  ECF No. 1.  On March 4, 2015, a grand jury for the Northern District of California returned an indictment against Defendant and co-defendants Solorio and Ricardo Reyes. ECF No. 12. Defendant was charged with one count of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(C), and two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c).

### C. Defendant's Guilty Pleas and The Sentencing Hearing

On March 18, 2016, Defendant pleaded guilty without a plea agreement to all three counts of the indictment.  ECF No. 95.

The Court conducted a sentencing hearing on August 15, 2016.  ECF Nos. 114, 115.  In light of Defendant's Criminal History Category of I, the Probation Office calculated the resulting advisory Sentencing Guidelines range as 168-210 months.  PSR ¶ 86, Recommendation.  The government recommended a 168-month sentence, at the low end of the applicable guideline range.  ECF No. 100. The Probation Office recommended a downward variance from the otherwise applicable range to a sentence of 144 months.  PSR Recommendation.  The Court imposed a below-guideline sentence of 154

months' custody for each count, to be served concurrently, followed by three years' supervised release. ECF Nos. 104, 115. In imposing the sentence, the Court noted that it was "troubled" by Defendant's conduct, and in particular the role Defendant had played in getting his younger nephew, Solorio, involved in the methamphetamine trafficking scheme. ECF No. 115, Tr. 8/15/16 24. The Court stated, "[i]t almost seems like he [Solorio] was taking or at least not the major person but he was following what you had put in place subsequent to your conversations on the phone with buyers of the drugs and it turned out to be an informant or a police agent." ECF No. 115, Tr. 8/15/16 24. The Court noted Defendant's lack of criminal history and work history and varied downward from a low-end guideline sentence of 168 months to a sentence of 154 months. ECF No. 115, Tr. 8/15/16 24-25.

### D. Defendant's Appeal and The Dismissal Of The Appeal

A timely notice of appeal was filed on August 23, 2016. ECF No. 110. On April 24, 2017, the Ninth Circuit dismissed the appeal in light of Defendant's unconditional guilty pleas. ECF No. 116.

### E. Defendant's 2255 Motion

On July 16, 2018, Defendant filed a 2255 motion. ECF No. 120. In that motion, Defendant claimed that: (1) his trial counsel ineffectively handled plea negotiations; (2) his trial counsel failed to adequately explain the charges and possible sentencing outcomes to him; and (3) his appellate counsel ineffectively handled his appeal. On December 27, 2020, the Court denied the motion. ECF No. 160.

### F. Defendant's Personal Circumstances

Defendant is 40 years old. PSR, p. 3. Defendant entered the United States illegally when he was 18 or 19. PSR, ¶ 60. In light of Defendant's status as an undocumented immigrant, the Department of Homeland Security has filed an immigration detainer with the Bureau of Prisons (BOP), and Defendant will be subject to deportation proceedings upon his release from BOP custody. PSR, ¶ 60; Gov. Ex. 3. The PSR stated that Defendant was in good health in 2016 without any history of health problems. PSR, ¶ 68. Defendant makes no claim in his motion that he suffers from any newly developed medical conditions that would warrant his release by making him susceptible to a severe infection from COVID-19. ECF No. 162. Defendant's argument for release in the motion before the Court is based primarily upon his assertion that he is the only available caregiver for his ailing father. ECF No. 162.

## III. ARGUMENT

**REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED**

Defendant's primary claim is that his release is necessary so that he can take care of his ailing father. Defendant has failed, however, to establish that his situation is sufficiently "extraordinary and compelling" to warrant his immediate release. While it is certainly understandable that Defendant would be concerned about his father's welfare, 18 U.S.C. § 3582 was not designed to allow a defendant to modify his sentence for the purpose of serving as a caregiver to an ailing parent. Many defendants undoubtedly have parents or other family members struggling with health issues who would benefit from their presence out of custody. That fact alone cannot serve as a basis for a reduction in sentence. Furthermore, Defendant has failed to provide any documentation demonstrating the severity of his father's illness. Nor has Defendant shown that he is the only available caregiver for his father, and that all alternative care options within his extended family and support community have been exhausted.

Separately, an application of Section 3553(a) factors to Defendant's case does not support the conclusion that Defendant should be released, particularly given that he has only served approximately 61% of his sentence at the time of this filing, with over a third of his sentence remaining.

Defendant has not shown that his situation is so extraordinary or compelling that such a significant reduction in his sentence is warranted. His motion should therefore be denied.

**A. Administrative Exhaustion**

On September 17, 2021, Defendant submitted a letter to the Warden at his facility, CI North Lake, requesting his compassionate release. Gov. Exhibit 1. On October 18, 2021, the BOP denied Defendant's request. Gov. Exhibit 2. Thirty days have passed since the submission of Defendant's request, a timeline which presumptively permits the Court to review the motion on the merits. *See* 18 U.S.C. § 3582(c)(1)(A).

In his September 17, 2021 letter, Defendant requested release based on generalized concerns about COVID-19; however, Defendant did not provide any argument or documentation to the Bureau of

Prisons in favor of release based on the need to take care of his father. *See* Gov. Ex. 1. Accordingly, it is not clear that Defendant has administratively exhausted, or that this Court may review Defendant's motion on the merits, because the BOP has never had the opportunity to consider Defendant's claim of a need to provide care for his father. The government objects to Defendant's motion based on Defendant's failure to raise this specific claim with BOP for its consideration.

### B. Applicable Law

Assuming *arguendo* the Defendant has nonetheless met his procedural burden of administrative exhaustion, this Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See, e.g.*, *United States v. Reid*, No. 17-CR-00175-CRB-1, ECF No. 554 (N.D. Cal. May 5, 2020); *United States v. Robinson*, No. 18-CR-00597-RS, ECF No. 33 (N.D. Cal. Apr. 27, 2020).

The Sentencing Guidelines policy statement appears at § 1B1.13 and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Ninth Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants, *see United States v. Aruda,* 993 F.3d 797, 798 (9th Cir. 2021), courts of appeals have recognized that the policy statement continues to provide important "guideposts." *United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. 2021); *see United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Gunn*,

980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").

The Sentencing Commission also provides explicit examples of what constitutes an "extraordinary and compelling circumstance":

> **(A)**     **Medical Condition of the Defendant.—**
>
> (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)     The defendant is—
>
> (I)     suffering from a serious physical or medical condition,
>
> (II)     suffering from a serious functional or cognitive impairment, or
>
> (III)     experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B)**     **Age of the Defendant** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.
>
> **(C)**     **Family Circumstances.** —
>
> (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

USSG § 1B1.13 cmt. n.1.

In general, a defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).

**C. Defendant Has Not Provided Extraordinary And Compelling Reasons for Release**

Defendant's motion fails to justify his release under any of the above criteria.

**1. Defendant Does Not Personally Suffer From Any Adverse Health Conditions**

The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement contemplates specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. Accordingly, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

Defendant generally cites to concerns about exposure to COVID 19 as a reason for release, ECF No. 162 at 5, but he does not claim that he suffers from a health condition that would put him at increased risk of severe infection from the virus. Defendant is approximately 40 years old and was assigned to regular work duty status with no medical limitations as of August 2021. Gov. Ex. 4. Defendant has never provided any claim or evidence that he has any health issues which would make

him vulnerable to COVID 19, and he has not pursued an argument that he should be released based on any specific adverse health conditions in the motion before the Court. ECF No. 162. Separately, Defendant has made no showing that his current environment presents a significant risk to his health; in fact, there are currently zero positive cases of COVID-19 at Defendant's facility, CI North Lake. www.bop.gov/coronavirus (last checked on February 28, 2022). In addition, Defendant has certainly been offered a vaccine at this point, a fact which precludes from eligibility for compassionate release based on risk of severe illness upon contracting COVID-19. *See*, *e.g.*, *United States v. Kaneshiro*, 2021 WL 1138058, at *3 (D. Haw. Mar. 24, 2021). On this showing, Defendant has failed to demonstrate any justification for compassionate release based on concerns about COVID-19.

**2. Defendant's Family Circumstances Do Not Compel His Release**

Defendant's primary argument in his motion is a request for compassionate release based on his ailing father. Defendant's request for release on this ground should be rejected.

First, as understandable as Defendant's concerns for his father might be, they do not render his case extraordinary—those sentenced to incarceration unfortunately all too often leave behind loved ones for whom they would like to provide support or care. Defendant's main argument is that his father would benefit from him his ability to serve as a caregiver. But such a statement could apply to any defendant with an older parent who is dealing with health issues. Without more, this is inadequate. *See United States v. Johnson*, No. 98-CR-860-ARR, 2020 WL 2124461, at *3 (E.D.N.Y. May 5, 2020) (denying compassionate release because defendant's "conclusory statement that his 'presence is very much needed'" to help his 'elderly mother who takes care of [his] mentally challenged sister'" was insufficient to show extraordinary and compelling circumstances).

Second, Defendant does not provide any limiting principle for his claim—the logical extension of his argument would be that all convicted defendants with older parents who encounter caregiving challenges would be eligible for compassionate release, even without other conditions favoring release.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY
CR 16-00211-LHK 8

Third, it is not clear that care for an ailing parent is even a situation which is appropriately considered by the Court under 1B1.13. While the government acknowledges at least one court has found that caring for an elderly parent supported a compassionate release order under 1B1.13, *United States v. Bucci*, 409 F.Supp. 3d. 1 (D. Mass. 2019), the plain language of 1B1.13 does not, on its face, contemplate release for the purpose of caring for an elderly parent, and other courts have viewed the guideline as not applicable to a caregiving circumstance involving a parent in failing health. *See United States v. Ingram*, 2019 WL 3162305, at *2, 2019 U.S. Dist. LEXIS 118304, at *4-5 (S.D. Ohio July 16, 2019) (denying compassionate release to defendant to care for ill mother because "[m]any, if not all inmates, have aging and sick parents"); *United States v. Goldberg*, 2020 WL 1853298 at *4 (D.D.C. April 13, 2020) ("[w]hile certainly admirable, a desire to help care for one's elderly parents does not qualify as an "extraordinary and compelling reason" for release under U.S.S.G. § 1B1.13, nor, therefore, under 18 U.S.C. § 3582(c)(1)(A)(i).")

Fourth, Defendant has not factually established that he is the only available caregiver for his father. The PSR indicates that Defendant has a sister in Las Vegas and a wife and a daughter (who may now be a young adult) who live in Mexico. PSR, ¶¶ 61, 62, 66. Defendant provides no explanation as to why these adults, or other adults in his family or community, could not assist with his father's care.

Defendant has failed to establish that his need to care for his father qualifies as an extraordinary and compelling circumstance warrant a reduction in his sentence. His request should be denied.

### 3. Section 3553(a) factors weigh against Defendant's release

Any compassionate-release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Shayota*, No. 15-CR-00264-LHK-1, ECF No. 780 (N.D. Cal. May 26, 2020) (denying compassionate release for defendant who served less than 6% of his custodial sentence based on analysis of Section 3553(a) factors); *United States v. Furaha*, No. 09-CR-00742-JST-1, ECF No. 36 (N.D. Cal. May 8,

2020) (denying compassionate release for defendant who served roughly 20% of his sentence based on analysis of Section 3553(a) factors). Thus, this Court may consider the amount of the imposed sentence served as an appropriate consideration under 18 U.S.C. § 3553(a).

Here, the Defendant has served only approximately 61% of his sentence, with over a third of the sentence unserved. The length of time remaining on his sentence thus does not favor his immediate release. Nor do other 3553(a) factors—all of which the Court already considered when imposing Defendant's sentence—support Defendant's request for premature release. Defendant's motion ignores the danger presented by his involvement in arranging a 12-pound methamphetamine transaction in a public parking lot, as well as the tremendous community harm caused by the distribution of large quantities of a drug with a well-documented track record of ruining the lives of its users.

Furthermore, Defendant already received a lenient, below-guideline sentence. The government recommended a sentence of 168 months. ECF No. 395. The Court calculated the guideline range as 168-210 months and imposed a sentence of 154 months, electing to vary downward below the low end of the Guideline range. ECF No. 115, Tr. 8/15/16 24-25. Granting Defendant's motion under 18 U.S.C. § 3582(c)(1)(A) would undermine the Court's careful calculus in its original sentencing determination. The facts do not support such a drastic re-balancing of the 3553(a) factors.

## IV.  CONCLUSION

Defendant has failed to provide extraordinary or compelling reasons justifying a reduced sentence. Defendant does not claim to have any adverse health condition, and the need to care for his father, while understandable, does not support his release request. Furthermore, Defendant has not established that a re-assessment of Section 3553(a) factors warrants a reduced sentence. Defendant's motion for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i) should therefore be denied.

DATED: February 28, 2022        Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
JEFFREY D. NEDROW
Assistant United States Attorney